1451110 Young v. United States Postal Service 12B6 motion, that was dismissed by the district court. We filed a first amended complaint alleging that the union breached its duty of fair representation. And this case is about a 26-year employee with the United States Postal Service who lost her job, which is the capital punishment, the death penalty equivalent in an employer-employee relationship. And because of the countless failures of the union, Ms. Young lost her job. And that's what this case is about, is those countless failures. Not because of her absenteeism? She was entitled to grieve her absenteeism. That's the second part of these Section 301 cases, is that first we have to prove that the union breached its duty of fair representation. When I say first, I mean we must prove both. We also have to prove that there was some sort of a breach of contract. And we're alleging two different types of breach of contract. The first type of breach of contract occurs at this predisciplinary meeting. And at a 12B6 motion in the complaint, what plaintiff says, the inferences go in her favor. And she says, one, I had a right to ask these questions at this predisciplinary meeting. And the United States Postal Service breached that contractual right. It's as simple as that. One, I have this right. Two, you did not give me that right. Okay? The second, and I won't necessarily say more complicated, but the second issue regarding the breach of the collective bargaining agreement deals with the inherent rights of what a union does and why we have grievances, why we have arbitrations. And I propose to you, especially in this case, many of the cases that you look at regarding grievances and arbitrations don't necessarily deal with federal employees. But the United States Postal Service, she's a federal employee. She does not have those due process rights with the Merit Systems Protection Board. So the right to grieve these instances are particularly important in Ms. Young's case because there are no merit system protection rights for postal employees who are members of the union and can grieve them. So the second right from the collective bargaining agreement is as simple as you charge me AWOL and I deny being AWOL. The reason she denied being AWOL, absent without leave, is first she called in as required. She did everything that she was told to keep her job as required. I did it. I called in. Well, I can, you know, people can call in but not have a right to be absent from work. Yes, and that's what it looks like on the face. And that's why we cited the low case, the LOE case. It involved fighting. Okay? And essentially what that case stood for is the proposition, the fact that the facts and circumstances regarding a termination need to be looked at. The just cause termination, which is also cited in McCall, that look at the circumstances of, one, she called in, and two, she was being worked beyond her restrictions. And that is enough to excuse an individual for being absent in this case. Why was she absent? I know there was surgery, but what was the problem? She was having, she couldn't move her arm. She's been a postal employee for 26 years, and she had an on-the-job injury, and she was being worked beyond her restriction where she was doing some serious manual labor of loading packages and assorting machines and things like that. And at the end of the day, and this is a couple months after returning from actual surgery for the injury, at the end of the day she just couldn't do this anymore and couldn't show up to the work the next day to actually perform this work. So what gives her the right without, say, a doctor's excuse or something to just call in and say, sorry, I'm not going to be there? What gives her the right to then? Is the fact that this is the reason we have, one, the predisciplinary interview? Well, let me ask you, does the CBA say that an employee can post-surgery can call in and then be absent from work on a claim that they're being asked to work beyond restrictions? It does not specifically talk about that. Our interpretation of the CBA is that it requires just cause. The CBA is not going to cover every incident that happens, and especially this situation where you don't have those MSPB rights. When you talk about the punishment fitting the crime, it's our interpretation, because you are being worked beyond your restrictions, because you call in, she should not be terminated. And that's the two allegations regarding her termination, where it was breached, is first to not be able to explain herself and ask questions in this predisciplinary meeting, and the second thing is to be able to tell this to an arbitrator and say, hey, here's the reason this happened. How is that the Postal Service's fault? I mean, she went through the step one and step two grievances, and then the only reason she didn't get to the arbitration, as I understand it, is because it was untimely, which I know you have a beef with the union about, but how is that attributable to the Postal Service? The Postal Service had record that she did call in and that she was being worked beyond her restrictions. No, but I mean the right to arbitrate, which is what you said. They didn't give her that ability to go to arbitration. Exactly, and that's 100 percent on the union. But what she would argue at the arbitration would be those facts is you don't have just cause. For example, in a Merit System Protection Board, you talk about Douglas factors, mitigation, how punishment is applied to similarly situated individuals. Well, let's not get this confused with the MSPB. So, you know, you concede that under 301 to succeed in a hybrid action, you have to prove not only that the union screwed up, but also that she would have succeeded in being retained as an employee. And it seems to me you didn't plead anything. Your bare bones complaint just says I shouldn't have been fired. I mean, it doesn't plead how the CBA, you know, normally there are work rules that would explicitly state how the employee is to respond in a situation like this or to communicate. But you didn't plead anything about that. And at this stage, all that is required is for us to make that short, plain statement. There's been no discovery. I don't know who the comparators were, but we allege that we plead enough is, one, that she has a right to ask these questions at the pre-disciplinary meeting. And this is not a fantasy that Ms. Young has because it is plausible because the union confirmed this. The union confirmed that Ms. Young had this right, and this right was denied when the union, which was specifically pled in the complaint, said it should not have gotten this far. And the second thing we pled is not just the conclusory allegation that this was not just, she was fired without cause. We pled that, and then we said the facts behind that is, one, she called in as required. What her job told her she had to do. And, two, that she had the excuse for this because she was being worked beyond her restrictions. And I know the United States Postal Service, in their brief, they actually mention that we lose this on appeal. That we never talked about being worked beyond her restrictions. But the report, or excuse me, the record on appeal 249, and our actual appeal brief itself on page 29, talks about her being worked beyond her restrictions. And that is one of the reasons why this case, why she has these union rights. But if you like, would you like for me to move on to the union's conduct, or do you have any more questions about the breach? This case is not about a simple mismailing, okay? We allege many egregious facts based on the union's conduct. First, this is not the first rodeo of the union mailing this to the, or excuse me, filing an untimely grievance. This is the second time it happened. There were multiple lies that were told to the appellant. Ms. Young was told there was an indefinite extension granted. Ms. Young was told that a separate grievance was actually filed. But one of the most important things that this court needs to look at is this pre-disciplinary meeting that we talked about was one of the reasons why the collective bargaining agreement was violated. And this shows the perfunctory conduct that allows us to succeed on our duty of unfair representation. This shows them completely ignoring Ms. Young. It shows that they were only giving her cursory attention, things that show the duty of fair representation was filed. And what happened in this pre-disciplinary meeting, essentially it's a meeting that occurs seven days before the termination, where the United States Postal Service says you're going to be terminated. And this is where the alarm bells and whistles went off from Ms. Young and said, hey, this is the capital punishment and death penalty of my employment. We need to do something. When she needed the union the most, after 26 years of paying these dues, she said, help me. I need you to take notes during this meeting. And Stuart Garcia refused to do something as little as take notes. He refused to interject and let the United States Postal Service know that Ms. Young had these rights. And it's not like the Bennett case that was cited by Apelli Unions, where we expect the steward to get thrown out of the room and things like that. We just expected a simple acknowledgment from him. Well, I guess the problem I have with your, you know, what you cite as being the union's conduct is certainly not good. But I think the only thing that I see in your complaint, and we are on a 12B6 appeal, is paragraph 57. The U.S. Postal Service did not have good or just cause to terminate the employment of plaintiff and the discharge was in violation of the collective bargaining agreement. Plaintiff was entitled to remain employed with the Postal Service. I mean, you know, she could have been absent for two years before all of this occurred. But for all we know in this complaint, we can't tell what the CBA required. And I would point you, if you're on the page of the record, it would be paragraph 54, which I stated, Plaintiff called in required and the Postal Service was on notice. She had returned from five months' leave due to surgery, and she was being worked outside of her restrictions. That's, as we discussed earlier, we're alleging not only the violation of being able to ask these questions, which are alleged on paragraph 43, where the union confirmed, I don't know how it got this far, and paragraph 27, where it states that plaintiff is entitled to not only be able to ask these questions, but be able to write a statement. So that's our position regarding the collective bargaining agreement being violated. But moving back to the union and the conduct that the union did regarding this pre-disciplinary meeting, when these alarm bells went off and you had these seven days, Ms. Young is required to write a statement after this pre-disciplinary meeting. And Steward Garcia wouldn't even meet with her, wouldn't even be with her to write this pre-disciplinary statement occurring after. It's something that's required. And that definitely shows how they ignored her. I will also pose to you that the inference goes to Ms. Young in this case. But even if it went to the union where Mr. Steward Garcia had a reason for this, maybe his wife was in a car accident, he was distracted that day. Even if you give the union the benefit of the doubt for some of these situations, it doesn't explain the other conduct. It doesn't explain where these seven days where Ms. Young knew she was going to be terminated, she called them three times. And it doesn't explain why the union would not meet with her. So it's definitely a situation where we believe that Ms. Young was treated in a perfunctory manner. And the next thing that we allege besides perfunctory is also that she has pled enough evidence regarding bad faith. We allege collusion. That the reason Ms. Young was terminated is because her supervisor and her union steward were colluding to get her. Look at the facts. Lying to Ms. Young. Ignoring her. Not speaking to her for three days. Not filing the separate grievance despite them telling her to. Excluding her from hearings. And then finally untimely mailing this grievance. Okay? And whether, you know, their position and the arbitrator's position was that it was just simply mailed to the wrong location. Was it a grievance or was it an underline? Excuse me, an arbitration. Request. An arbitration request that was ruled to be untimely. Because supposedly it was mailed to the wrong location. And the reason it was mailed to the wrong location is completely unexcusable. This occurred two years ago, the change in the address. Three different signs were in the union office. And Steward Garcia has mailed previous grievances to this. So the inference should be that he was intentionally messing with plaintiff's arbitration. Thank you very much. All right, thank you, sir. Okay, Mr. Anderson. Good morning, Your Honor. Michael Anderson for the American Postal Workers Union. There's some irony here that the union is now being sued for not interjecting questions during a predisciplinary meeting. Because those were the facts in Bennett v. Barnett decided by this court in 2000. In that case, a postal union steward did more or less what Tamara Young is now demanding, interjected questions. Tried to turn a predisciplinary interview into the equivalent of a grievance hearing where the union would cross-examine the supervisor. And the postal service threw the postal union steward out of the facility for that conduct. And this court in the 2000 in Bennett v. Barnett ruled that the postal service was within its rights. It ruled that a predisciplinary interview is just that. The union steward is allowed to be there, but does not have more than a passive role to sit and observe. Is not allowed to ask questions. Is not allowed to somehow turn the matter. Well, let me ask you, though, what about the victim, the object of the hearing, Ms. Young? Shouldn't she have been allowed to say something at that hearing? That's not what the Supreme Court says in NLRB v. Weingarten. And that's not what the Fifth Circuit said in Bennett v. Barnett. I said Ms. Young. I didn't say the union steward. I understand. So a predisciplinary hearing is just a predisciplinary speech? It's not a hearing. It's an interview. It's the point where management tries to get her. An interview starts with the word inter, which means between. So it implies that there are two sides. And what I asked you was why wasn't Ms. Young allowed to say anything in her defense at that interview? Because she has the opportunity to say that in her defense in steps one and two of the grievance proceeding. That is the hearing where she's allowed to talk about, where she's allowed to ask the supervisor questions. In a Weingarten interview, which is the official name for a predisciplinary interview, it's the supervisor who is asking questions of the grievant. The grievant does not ask questions of the supervisor. And that's the fundamental law that this court ruled in Bennett v. Barnett. Well, maybe I'm hung up on semantics then. So she was allowed, she could answer questions from the employer, but she wanted to interrogate the employer. That's exactly right. That's exactly right. And that is what the Supreme Court says is the distinction in NLRB v. Weingarten. Now to the question about writing up her statement. She complains that her steward in the week before she was terminated didn't help her write her statement. But the steward is not the witness. In this case, she is the one with the only knowledge of why she thinks these absences were privileged and therefore in compliance with the contract. And in paragraph 38 of the First Amendment complaint, Ms. Young admits that her steward received her statement. And there's no allegation of what difference it would have made if her steward had stood over her helping her write the statement. She's the witness. She knows the facts. Then after she was fired, the union timely filed a grievance. It's a very important distinction that Judge Jones makes between filing a grievance and filing for arbitration much later down the road. The arbitration award, which is before this court as part of its 12 v. 6 review because it's quoted and incorporated in the complaint, sets forth that the union timely filed a step one grievance. It went to a hearing. The Postal Service refused to budge on the termination. The union timely filed a step two appeal and again was unable to change the Postal Service's decision. That is the extent of the internal grievance procedure under the contract. And nowhere in the complaint is there any allegation that the union failed to set forth fairly and fully all of the facts that Ms. Young wrote out in her statement that she gave to the steward. There's no allegation that the union suppressed evidence, that it failed to investigate a particular witness, that there was any failure to develop facts that would have made a difference to the Postal Service's decision. Now, going all the way through step two, which is the final step in this particular CBA, the only step after that is to go to arbitration. This is a discretionary step by the union. There is no such thing, as counsel says mistakenly, as a right to arbitration. Even where a grievance like Ms. Young could convince a civil jury that her grievance had merit, that there was a breach of the contract, she is not entitled as a matter of right to have the union spend its limited resources to go to an arbitration. Is this any different from private collective bargaining agreements? No, it's treated under the 301 in the same way. Okay. Right. And therefore, the Supreme Court's law in private duty of fair representation cases, principally Vaca v. Sipes, decided in 1966, says that a union cannot be sued for failing to go to arbitration just because the grievant claims to have a meritorious grievance. So if the union had said at the end of step two, Ms. Young, we have decided not to proceed any further, we're not going to arbitrate, she would not have had a DFR claim against the union. She could not have claimed that her treatment was perfunctory because the union exhausted all the two steps of the contractual grievance procedure and apparently with no objection even now as to its conduct in those steps earlier on. But I urge the Court to read the arbitration award that is, as I said, part of the 12B6 review, because it shows what happened, the reason why the arbitrator found that the arbitration had been filed for untimely. The Postal Service didn't raise timeliness at any time until the day of the hearing. When it did, and this is all recorded in the arbitration award, the union strenuously objected that the Postal Service had waived any timeliness objection by not raising it prior to this time. And the union also said, if you're going to consider this belated timeliness defense, Mr. Arbitrator, you have to consider that we did timely within the 30-day period send an appeal to the Washington, D.C. Postal Service Appeal Center and the only objection they're making is that it should have gone to the Tampa division. Now, unfortunately, this arbitrator, Arbitrator Erbs, chose an extremely hyper-technical way of resolving the grievance. And the union's view, it's horribly unfair. But we accept its finality. This Court doesn't have the authority to vacate the arbitration award now. We have to live with that. But I provided you in the briefs with the overwhelming arbitral and court authority that what the arbitrator did here was very much the exception to the rule. Most arbitrators would have held the Postal Service to have waived the timeliness objection by springing it by ambush at the hearing. Most arbitrators, even if they considered the defense, would have found that the letter to the D.C. Appeal Center counted as substantial compliance. And the analogy I point out is that if an appellant mistakenly files a notice of appeal with the Fifth Circuit clerk rather than the district court clerk, under the federal rules of civil procedure, there is tolerance for that error. That is still deemed to be a sufficient appeal. And it is a shame that Arbitrator Erbs chose to dwell on the technicality rather than to hear the grievance on its merits. In that respect, this case is very much like the Fifth Circuit decision in Coe v. United Rubber Workers, decided in 1978. In Coe, just as here, the arbitrator said, well, the union has untimely filed the grievance because it turns out that the union garbled the docket numbers when it wrote out the notice of appeal, which was very technical and, in the union's view, very unfair. And the Fifth Circuit said, well, you might be able to point the finger at the union for having made a mistake in writing out the docket numbers, but we're not going to hold that that is a breach of the duty of fair representation, particularly because it goes to the union's conduct of discretionary arbitration and not the internal grievance procedure that the grievant enjoys as a matter of right. But in Coe, there was no inference to be drawn other than that it was just a mistake, whereas here we have the allegation that, except for Ms. Young, most of these requests were being sent to the proper place in Tampa after that change went into place, but for some reason hers was sent to the DCA. Right. But what is missing from the complaint is some explanation of union motive. And there's no allegation that Ms. Young was a union dissident or refused to be a union member or that the union was hostile to her for race, sex, age, anything like that. All these issues with her steward arose after this process? There wasn't any of that, allegations before that might have motivated? No. I mean, the one argument about supervisor colluding with the steward I show in the brief goes to whether stewards enjoy preference in scheduling and overtime. That is a very common industrial practice that has repeatedly been upheld as lawful. And if the Court were to say that that creates some sort of prima facie inference of collusion and breach of the duty of fair representation, half the industries in America would be suffering under, you know, that kind of presumption, that there is presumptively collusion just because stewards enjoy that kind of preference. And I see my time is up, unless the Court has further questions. No, sir. Thank you. Thank you for your time. All right. Mr. Rodriguez. Good morning, Your Honors, and may it please the Court. Ms. Young spent most of her briefing in the district court proceedings and in this court regarding her DFR claim against her union. I respectfully submit, however, there is a much simpler and easier way for this court to affirm the district court's judgment. First of all, it can do so by finding that the district court did not abuse its discretion when it denied Ms. Young leave to file a second amended complaint. The district court did not abuse its discretion in denying leave to amend because Ms. Young did not explain the deficiencies a second amended complaint would cure. She did not explain how a second amended complaint would survive a renewed motion to dismiss and not be futile. In failing to provide both of those explanations, she denied the district court the opportunity to decide that issue. She also provided no explanation in support of her request for leave to amend, despite seeing the grounds for the Postal Service's motion to dismiss. Her request to amend was a mere afterthought in her response to the motion to dismiss, and it did not state with particularity the grounds for relief as required by Rule 7. She also failed to comply with the district court's local rules in that she did not submit a copy of her proposed second amended complaint for the district court's review, and in fact, Your Honors, her briefs in this court also failed to explain the facts she would add in order to state a claim for relief. The district court also did not abuse its discretion in dismissing her complaint without discovery because, Your Honors, this was a Rule 12b6 motion, and as this court is aware, they're decided based on the complaint alone. Discovery would go beyond the complaint. As for the merits of a breach of contract claim, she did not allege sufficient facts stating a possible claim for relief because calling in did not excuse her absences. She did not provide any facts from which this court could draw the reasonable inference that the collective bargaining agreement somehow excused her absenteeism because she called in. If that were true, Your Honors, no employee could ever be disciplined for absenteeism if they simply called in. In the Supreme Court, in Iqbal, the Supreme Court stated that courts may rely on their judicial experience and common sense in determining whether a complaint states a plausible claim for relief. In this case, Ms. Young alleges no facts that the collective bargaining agreement excuses her absenteeism by calling in, and common sense dictates that no collective bargaining agreement would ever have such a provision. Her subjective belief that calling in somehow excused her absenteeism is simply not enough. She also failed to allege any facts supporting her contention that the Postal Service either violated her work restrictions or that she was absent because they violated her restrictions. In fact, no facts whatsoever are alleged in her amended complaint regarding the nature of her work injury, the nature of her work restrictions, the nature of her duties. No facts are alleged regarding how the Postal Service violated her work restrictions, and she does not even allege whether she was released before light-duty work. All of those facts, Your Honor, are uniquely within her knowledge and control, and after Twombly and Iqbal, I think it is fair for this Court to require that she plead those facts in her amended complaint. Alleging in conclusory fashion that the Postal Service fired her without just cause is simply not enough, Your Honors. It's the same thing as alleging in a Title VII case that I was fired because I'm Hispanic. This Court has repeatedly stated in Title VII cases that sufficient facts must be alleged supporting an inference of discrimination. In this case, Ms. Young alleged absolutely no facts showing how her work caused her absenteeism and no factual nexus was alleged between the work she was assigned and her absences. What facts would have been required here? Your Honor, she could have alleged, and these are all within her knowledge and control because she presumably knows what her work restrictions are, what her injury is, what the Postal Service was asking her to do. She presumably knows how the Postal Service violated her work restrictions. So those are the kinds of facts. For example, I think she said she had a hand injury. She could have said or alleged my doctor released me with a 10-pound lifting restriction, but the Postal Service was asking me to lift repeatedly 20 pounds a day. She also had an opportunity to clearly allege how the Postal Service violated the collective bargaining agreement by working her beyond her restrictions, but she failed to identify those facts, Your Honor, when she sought leave to amend. But even if this Court assumes for the sake of argument that she did somehow allege sufficient facts showing a violation of her work restrictions, any claim based on that violation would be barred by the Federal Employees' Compensation Act, or FECA. And that's because she alleged an on-the-job injury. In White v. U.S., this Court stated that courts have no subject matter jurisdictions over claims involving work injuries unless it is certain that the Department of Labor would find no coverage. Under Federal law, the Department of Labor is responsible for determining whether a job offer is within an employee's work restrictions. And the statute there is 5 U.S.C. 8106, letter C, and 5 U.S.C. 8145. Well, how do we have enough facts to even speculate about that? About what, Your Honor? FECA. Because she alleges an on-the-job injury. And even so, and FECA governs when an employee is making a claim with respect to her on-the-job injury. In this case, she's alleging that we somehow violated her work restrictions. And, again, Congress has determined that the Department of Labor is the one who gets to decide whether an employer's job offer is within an employee's work restrictions. The Federal regulator— Well, that's not alleging the complaint, Your Honor. But it could be, if she had an on-the-job injury, what the Postal Service typically does is work with the employees to bring them back with some sort of modified job assignment. But the magistrate judge didn't rely on that at all, did she? Well, that's correct, Your Honor. But this is a subject matter jurisdiction defense, which this court is aware that can never be waived. Furthermore, to the extent there's any ambiguity in the complaint, it's the responsibility of Ms. Young to clearly state her claim for relief. But the bigger point is, to the extent there is any ambiguity in the complaint about that issue, in White, this court determined that courts have no subject matter jurisdiction involving work injuries unless it's absolutely certain that the Department of Labor would find no coverage. And the Federal regulation on top of those USC sites that I just cited are 29 CFR 10.515 to 10.517. In fact, also, several courts, including a few in the Western District of Texas where this case arose, have ruled that FECA bars claims alleging violations of work restrictions. The FECA preemption issue was raised in our opening brief, Your Honor, but Ms. Young did not address this issue in her reply brief. With respect to her allegations that there were certain rights in the collective bargaining agreement that the Postal Service violated, I think Ms. Young just admitted today that the collective bargaining agreement does not say that calling in excuses or absences. With respect to the other rights, her argument down below in the district court, and even on page 29 of her brief, Your Honor, was really this, that the Postal Service violated three rights. The first right was the right to supposedly ask questions at a disciplinary interview. Now, the amended complaint does not allege clear facts showing whether it was the Postal Service supervisor or the steward who denied her that right. It's unclear to me also how the Postal Service could be held vicariously responsible for her own steward's alleged refusal to meet with her to write the statement. But setting aside for the moment and assuming for the sake of argument that the Postal Service somehow denied her those two rights, on page 4 of their brief in this court, the opening brief, they conclusively admit that those two rights are found in the union's rules, not in the collective bargaining agreement. So even if the Postal Service violated those two union rules, it's not tantamount to violating the collective bargaining agreement. With respect to her right to dispute the reasons for her termination, again, it was the union and not the Postal Service who denied her that right by filing her appeal to arbitration in an untimely manner. There is absolutely no allegation in the amended complaint that the Postal Service did anything to contribute to the union's untimely filing. The other point, Your Honors, is that I think her attorney just conceded this morning also that with respect to the denial of her right to dispute the reasons for her termination, I think he said that was 100% on the union. So, again, the three rights that she alleges the Postal Service violated, for the reasons I've just discussed, do not state a claim for breach of the collective bargaining agreement. This whole deal about Ms. Young not having MSPBRI rights, well, she does have rights under the Rehabilitation Act of 1973. So if somehow her rights were violated, she could have pursued relief under that provision. Unless the Court has any questions for me, I see that I have about a minute left. I'd be happy to answer them. I guess not. Thank you. In closing, for all the reasons I've just discussed and for those set forth in our brief, the Postal Service respectfully requests that this Court affirm the district court's judgment in all respects. Thank you. Thank you. Mr. Plasek. Thank you. On rebuttal, the first thing I want to address is the union appellee's contention regarding the fact that actually filing this appeal to arbitration was a discretionary step. It's my interpretation, my belief, that they severely misstate the law, that they are not required to process grievances that have merits. Do you get that off the VACA case? I get it off the VACA case, that you must process a grievance that has merit. There are exceptions to that, okay? But here at a 12B6, the inference has to be given to Ms. Young. They haven't put forth any sort of an excuse why the grievance should not be processed towards arbitration. When you talk about processing a grievance and it being a discretionary step, that VACA case says there's no absolute right. And then that's where it goes into the exceptions. One might be cost. Two might be we just don't know the facts yet. But they did file for the arbitration. It was just sent to the wrong place, causing it to be untimely, right? Yes, but they still have the responsibility to file this if there was merit to this arbitration, which they obviously believe there was merit, which is more evidence that the collective bargaining agreement was violated either at this predisciplinary meeting or this was violated by being worked beyond her restrictions. Essentially, it's akin to being asked to babysit. You're not required to babysit someone's kids. But if something happens to the kids while you're babysitting them, you're responsible for that. So the argument that they're completely relieved of liability is cut across in this case. And if you actually look at the brief from the United States Postal Service, they kind of tiptoe around this and they said, well, the U.S. Postal Service in borderline cases would not file for arbitration. Well, we don't believe this is a borderline case. What authority do you have to support her right to ask questions during the pre-termination interview? We have two lines of authority, and that's something I was absolutely going to get to. We have not conducted discovery on this case. This is a 12B6 motion where the inferences need to be given to Ms. Young. And the authority we have is, one, from Ms. Young that she has these rights, that she has the rights to ask these questions, and, two, the authority from the union saying— It's not in the CBA, though? The CBA doesn't address that right? I don't know if it's in the CBA or not. My understanding is that it's a local rule is what I've been told. And that's why specifically in our briefs and our pleadings, we never specifically addressed Weingartner. Whether it's a Weingartner right, whether it's a local rule, whether it's contained in the CBA, it doesn't matter. At this stage, the inference is to Ms. Young. And that's exactly what the McCall case talked about. The question of inference or just what the legal rights are? I mean, either the CBA provides this right or somewhere in the case law this right exists. Why is it an inference issue as to whether a right exists or not? It's not an inference. We said it exists, and it's completely plausible that it exists. Well, plausibility is when you're talking about something that's written down somewhere. I mean, it's got to be known to both parties in order for it to be a part of the collective bargaining agreement, doesn't it? Well, then I guess that goes to the inference. If we're saying it exists and they're saying it doesn't exist, we get the inference. Anyone can say they have all kinds of rights, and then they get past 12b-6. Rights don't come from a party. They come from some source. No, absolutely. And that's the source that Ms. Young talks about is these local rules and that she had the right to do this. And this plausibility is confirmed where this is not just fantasy land of her having these rights, is when the union stated that it should not have gotten this far. And that's specifically why we included that in there. Well, move on and, Sig, can you respond to any of the Postal Service's arguments? The Postal Service argument regarding the union rules? No, the Postal Service argument regarding just cause and the primary jurisdiction of the FECA and so on. I mean, again, our interpretation under McCall, under Lowe, is that we have the right to appeal for this just cause. The Federal Workers' Compensation Act might give additional rights to Ms. Young, but there is the inherent right regarding this is unfair, I should not have been terminated. For example, they mentioned the Rehabilitation Act. The Rehabilitation Act would not have been able to be timely filed in time. And as attorneys, a lot of times we will do different causes of avenue because it's easier to win. For example, it's easier to win an arbitration versus it is to win a case under the Rehabilitation Act. So there are other rights. Unless you have any more questions? Okay, thank you. Thank you very much.